UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Case No. 19-cr-00192 |
| v. | ) ) | |
| ROMMEL KELLOG, | ) ) | Judge Sharon Johnson Coleman |
| Defendant. | ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

On December 11, 2023, a jury convicted defendant Rommel Kellogg ("Kellogg") of conspiring with another to commit the offenses of theft and intimidation in violation of 18 U.S.C. § 371, and aiding and abetting the use of a facility in interstate commerce with the intent to facilitate unlawful activity, namely theft and intimidation, in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2. On January 10, 2024, acting on his own, Kellogg filed a motion for retrial. After receiving appointed counsel, Kellogg's counsel filed a motion for new trial and motion for acquittal. On December 16, 2024, Kellogg's counsel informed the Court that while the *pro se* motion was nearly duplicative of the counsel-filed motions, the counsel-file motions expanded on the *pro se* motion. Accordingly, this Court will consider all posttrial motions in this ruling. Before the Court is Kellogg's *pro se* motion for retrial, motion for judgment of acquittal, and motion for a new trial brought pursuant to Federal Rules of Criminal Procedure 29(c) and 33. For the following reasons, the Court denies Kellogg's post-trial motions [205] [231] [232].

**BACKGROUND**

During the four-day jury trial, the Government presented evidence that Kellogg's co-defendant, Corey Johnson ("Johnson"), collected payments from Dennis Dezutter ("Dezutter") and

1

later, Alicia Arnold ("Arnold") over a years-long period, to avoid Harvey police raids of the establishment, Arnie's Idle Hour, a strip club in Harvey, Illinois. Prior to 2008 and continuing for several years, Dezutter, the manager of Arnie's Idle Hour, and later, Arnold, paid Kellogg's cousin, Johnson, bi-weekly payments of $3,000. If the payments stopped, Harvey police, including Kellogg's brother and Harvey police officer, Derrick Muhammad ("Muhammad"), would raid the club and shut it down until payments resumed. The Government's evidence sought to show that Kellogg was aware of the arrangement and aided and abetted the unlawful activity.

      At trial, the Government elicited testimony from witnesses, including FBI Special Agents Carrie Landau, Lyle Evans, and Nijika Rustagi. While investigating Arnie's Idle Hour for prostitution, the FBI Special Agents testified about the discovery of payments from Dezutter and Arnold to Johnson in order to avoid police raids of Arnie's Idle Hour. Upon learning of this scheme, the FBI provided funds to Dezutter, who acted as a cooperator, to give to Johnson for these monthly payments. The Government presented multiple recorded conversations between Dezutter and Johnson regarding the $3,000 monthly payments wherein Dezutter expressed anxiety that Muhammad would shut down Arnie's Idle Hour if Dezutter fell behind on payments. The Government also offered videos and witness testimony whereby Muhammad and Harvey police officer, Cameron Forbes, visited Arnie's Idle Hour and admonished Dezutter after he missed a payment. Lastly, the Government offered evidence in the form of text messages between Arnold and Dezutter where Arnold instructed Dezutter to make bi-weekly $3,000 payments to Johnson, referred to as "rent" or "pizza" money.

      The jury also heard recorded conversations between Dezutter and Kellogg where Kellogg acknowledged that Arnie's Idle House had previously been shut down when payments stopped. They also heard a recorded meeting where Dezutter gave Kellogg one of the $3,000 payments and told him that the payment was to avoid shutting down Arnie's Idle Hour. The Government likewise

2

presented wire intercepts where Kellogg asked Johnson to stay on top of Dezutter when he missed a payment, or asked to meet up with Johnson after Johnson collected a payment from Dezutter, referring to the payment as "pizza" or "food" money. Surveillance video was offered to show the meetup between Kellogg and Johnson immediately after Johnson received the money from Dezutter.

On December 11, 2023, the jury found Kellogg guilty on all counts.

**DISCUSSSION**

    **I.**    **Motion for Judgment of Acquittal**

A defendant seeking a post-trial judgment of acquittal faces an extremely high hurdle. *United States v. Vizcarra-Millan,* 15 F.4th 473, 506 (7th Cir. 2021). This is because when assessing Rule 29(c) motions, "courts view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Wallace,* 991 F.3d 810, 812 (7th Cir. 2021). In doing so, courts do not re-weigh the evidence or second-guess credibility determinations and make all reasonable inferences in the government's favor. *United States v. Ginsberg,* 971 F.3d 689, 695 (7th Cir. 2020).

Kellogg moves for judgment of acquittal on the basis that the Government failed to sustain its burden beyond a reasonable doubt as to both charges. He contends that the Government failed to demonstrate that there was a conspiratorial agreement between Kellogg and others and that Kellogg was a member of that agreement. Kellogg also argues that the Government failed to prove that he received any money nor did the Government prove that Kellogg transmitted any threat to anyone to pay him money to prevent government inspections and raids of Arnie's Idle Hour. Kellogg lastly argues that there was no "connection" between the money Dezutter gave Johnson and

3

any threats from Kellogg. The Government argues that it presented ample witness testimony and evidence to prove the charges beyond a reasonable doubt.

To convict Kellogg of conspiracy, the Government must prove (1) two or more people agreed to commit an unlawful act; and (2) Kellogg knowingly and intentionally joined in the agreement. *See United States v. Wright,* 85 F.4th 851, 861 (7th Cir. 2023). Viewing the evidence and all reasonable inferences in the Government's favor, there was abundant evidence that Kellogg was involved in the conspiracy beyond a reasonable doubt.

At trial, the Government played several clips from a January 23, 2018 meeting between Kellogg and Dezutter for the jury. In one of the clips, Kellogg told Dezutter that Kellogg put Johnson "in place" at Arnie's Idle Hour. Kellogg told Dezutter that even if Johnson didn't want to continue with his involvement in the arrangement, he wasn't "getting nothing out of it." In another clip, Dezutter and Kellogg discuss Dezutter stepping in for Arnold, who assumed the position of manager of Arnie's Idle Hour after her father passed, and "handling" the situation after Dezutter relayed that Arnold "feels now that she doesn't have to do certain things in this place that need to be taken care of." Upon hearing this, Kellogg responded, "But you know what needs to be taken care of." In a third clip, Dezutter complains that Arnold "don't want to do everything right," to which Kellogg responds that this is a business and "everybody makes money." In a fourth clip, Dezutter states "[Johnson] told me that he wanted to get out of delivering pizza" to which Kellogg responded, "He can't get out of nothing."

The clips from the conversation between Kellogg and Dezutter show that Kellogg was involved in the conspiracy as Kellogg brought Johnson into the payment scheme and directed Johnson to collect the payments from Arnie's Idle Hour. Kellogg's statement that Johnson "can't get out of nothing" suggests that Kellogg controlled Johnson's role in the scheme, essentially forcing him to collect the payments even though no longer wanted to do so. Kellogg's additional

4

statements warning Dezutter that Dezutter knows "what needs to be taken care of" after learning that Arnold did not want to continue making payments is further evidence of Kellogg's involvement in the conspiracy.

In another wire intercept from January 16, 2018, Johnson informed Kellogg that he thought a missed payment would come the following day. The following day, Kellogg called Johnson, telling him "I need uh, gas money, I need some food money, I need, you know." The Government also introduced multiple wire intercepts, accompanied by FBI Special Agent testimony, where Kellogg and Johnson immediately met up after Johnson received the payments from Dezutter. The Government presented ample evidence that Kellogg was involved in the conspiracy beyond a reasonable doubt.

As to the remaining counts, the Government likewise presented sufficient evidence that Kellogg aided and abetted unlawful activity through the use of a facility in interstate commerce beyond a reasonable doubt. To convict Kellogg under 18 U.S.C. § 1952(a)(3) (the "Travel Act"), the Government must show (1) the use of a facility in interstate commerce; (2) with intent to commit a specified unlawful act; and (3) the performance or attempt to perform that act. *See United States v. Dvorkin,* 799 F.3d 867, 876 (7th Cir. 2015). Under an aiding and abetting theory, the statute holds that whoever aids or abets the offense against the United States is punishable as a principal even if they did not commit the offense. *See* 18 U.S.C. § 2.

The parties stipulated that the Government exhibits, Exhibits 232, 240, 245, and 246, offered as evidence to support the Travel Act counts constituted use of a facility in interstate commerce. *See* 12/7/23 Tr. 166:21-25. The exhibits were text messages between Johnson and Dezutter from four separate meetups whereby Dezutter provided Johnson with the $3,000 payment. As shown in the conspiracy count, Kellogg was aware that Dezutter provided payments to Johnson. Johnson, thereafter, provided the payments to Kellogg. As the Government does not have to prove

that Kellogg actually committed the unlawful act to sustain a Travel Act conviction under the aiding and abetting theory, it is enough that Kellogg was aware that the payments were being made as part of the conspiracy to sustain a conviction for the Travel Act counts. *See United States v. Baker,* 227 F.3d 955, 961-2 (7th Cir. 2000).

Accordingly, the Court denies Kellogg's Rule 29 motion for acquittal.

## II.     Motion for New Trial[1]

Rule 33 authorizes district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Granting a new trial is "reserved for only the most extreme cases," and courts "approach such motions with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (citations omitted). "The applicable standard under Rule 33 requires a new trial 'only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict.'" *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (quoting *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016)). "The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Friedman,* 971 F.3d 700, 713 (7th Cir. 2020) (citation omitted). District courts have considerable discretion in determining Rule 33 motions. *Id.* at 716.

Kellogg argues that he received ineffective assistance of counsel at trial. The Government contends that Kellogg's trial counsel offered vigorous representation in the form of pretrial motions, arguments during trial, and robust cross-examination of the Government's witnesses.

To succeed on an ineffective assistance of counsel claim, Kellogg must show that "(1) counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to defendant by the Sixth Amendment and (2) the errors deprived defendant of a fair trial." *Hoglund v. Neal,* 959 F.3d 819, 833 (7th Cir. 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct.

---

[1] Kellogg's *pro se* motion for retrial closely mirrors the arguments in the Rule 33 motion for new trial. Accordingly, the Court incorporates Kellogg's *pro se* motion in its analysis of the Rule 33 motion.,

6

2052, 80 L. Ed 674 (1984)). For the first prong, the Court applies "a deferential presumption that strategic judgments made by defense counsel are reasonable." *Dunn v., Jess,* 981 F.3d 582, 591 (7th Cir. 2020) (internal citation omitted). The second prong requires a showing that, considering all evidence, "there is a reasonable probability that the errors changed the outcome of the trial." *Cook v. Foster*, 948 F.3d 896, 909 (7th Cir. 2020). "[T]his is not an easy standard to satisfy." *Jordan v. Hepp,* 831 F.3d 837, 846 (7th Cir. 2016).

Based on the evidence, Kellogg has not made a showing for either prong under *Strickland*. Kellogg identifies five main errors committed by his trial counsel: (1) failure to challenge the credibility of Dezutter by cross-examining Government witnesses about his cooperation agreement; (2) failure to establish facts about Kellogg's job and relationships on cross-examination; (3) failure to interview and call witnesses at trial that were provided by Kellogg to trial counsel; (4) failure to present Kellogg's version of recorded calls and meetings; and (5) trial counsel's memory lapses while arguing before the jury and witness examination.

As to Kellogg's claim that trial counsel failed to challenge Dezutter's credibility by cross-examining witnesses about his cooperation agreement, Kellogg's trial counsel *did* cross-examine Special Agent Evans about why Dezutter cooperated with the Government. *See* 12/6/23 Tr. 171:8-17. Likewise, Kellogg's trial counsel *did* cross-examine the Special Agent Rustagi about Kellogg's job. *See* 12/7/23 Tr. 89: 17-20; 169:10-16. Trial counsel properly cross-examined Government witnesses about both topics and therefore, there is no basis for ineffective assistance of counsel as it relates to the first two alleged errors.

Regarding Kellogg's claim that trial counsel failed to interview and call witnesses Kellogg provided to trial counsel, Kellogg does not identify what witnesses trial counsel failed to call nor does he outline proposed testimony for these unidentified witnesses. This is not a legitimate basis for ineffective assistance of counsel.

Kellogg likewise fails to carry his burden for the fourth alleged error, that trial counsel failed to present Kellogg's version of recorded calls and meetings, as Kellogg does not explain what his "version" of these calls and meetings are. Kellogg's *pro se* motion references writings he submitted to his counsel, such as a 42-page testimony titled "Truth, Fact and Evidence" and another writing titled "His-story," that he alleges his counsel failed to submit. However, after lengthy back-and-forth, Kellogg ultimately decided not to testify at his trial and therefore such evidence would be barred as hearsay. Fed. R. Evid. 801. Kellogg's decision not to testify cannot now be used as a mechanism to claim ineffective assistance of counsel. Additionally, Kellogg's *pro se* motion contains a list titled "Unsubmitted Articles of Substantial Evidence" that Kellogg claims was given to his attorney a year-and-a-half prior to trial. Under *Strickland*, "counsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691 (emphasis added). A decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Id.* Here, trial counsel's alleged failure to investigate evidence provided by Kellogg does not fall below an objective standard of reasonableness. An attorney could reasonably conclude that the evidence was irrelevant to the claims in the case and, if offered, would harm, rather than aid his case. As Kellogg does not identify how the evidence would have changed the outcome of his case, the Court finds no error in trial counsel's decision to not offer the evidence at trial.

Lastly, Kellogg fails to offer any evidence to support a finding that trial counsel suffered memory lapses while arguing before the jury and witness examination. The record shows that trial counsel zealously represented Kellogg by filing several pretrial motions, objecting to witness testimony and exhibits on the record, and vigorously cross-examining the Government's witnesses. Kellogg's *pro se* motion outlines a verbal exchange that occurred between Kellogg and his attorney while awaiting the jury verdict. While Kellogg rightfully acknowledges that the exchange was

8

abrasive, it does not prove that trial counsel suffered from any memory lapse. Accordingly, Kellogg failed to meet the first prong of *Strickland*.

Furthermore, even if Kellogg carried his burden to show ineffective assistance of counsel under the first prong of *Strickland*, which the Court firmly concludes he did not, Kellogg cannot show that the errors would have deprived him of a fair trial. For the reasons already stated, the Government presented sufficient credible evidence that Kellogg was involved in the conspiracy and that he aided and abetted the unlawful activity through the use of a facility in interstate commerce. For these reasons, Kellogg's *pro se* motion for retrial and Rule 33 motion are denied.

## CONCLUSION

For these reasons, the Court denies Kellogg's *pro se* motion for retrial, Rule 29 motion for judgment of acquittal, and Rule 33 motions for a new trial [205], [231], [232].

**IT IS SO ORDERED.**

Date: 12/23/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge